No. 58636.—Oxford University Press, New York, Inc. v. United States, protest 94630–K (New York).

EKWALL, Judge: This case is before us on rehearing, having been originally decided in *Oxford University Press, New York, Inc.* v. *United States*, 29 Cust. Ct.

191, C. D. 1467. The merchandise consists of bound books and color plates and wrappers for the books. The question of the proper tariff classification of the articles is not involved, the issue being confined to the rate at which the currency of the invoice should be converted into United States dollars under section 522 of the Tariff Act of 1930. A contract for the sale of these books was entered into between the author in Vienna and the plaintiff herein, prior to the incorporation of the Republic of Austria into the territory of Germany. At the time of exportation, June 22, 1938, Austria had ceased to exist as such and had become incorporated into the territory of Germany. (T. D. 49503, T. D. 50029.) The conquering German Government had called in the currency of Austria for redemption at the ratio of 3 schillings for 2 reichsmarks.

In our decision, for the reasons therein set forth at length, it was held that the merchandise was entered and appraised at the unit value of 6.60 Austrian schillings per volume. It was further held that, in the absence of a proclaimed value for the Austrian schilling for the quarter in which the merchandise was exported, and as the Federal Reserve bank would not certify a value, the action of the collector in converting the currency, by using the ratio of 3 schillings to 2 reichsmarks established by the German Government, and the certified value for the reichsmark, was justified upon the record made. Inasmuch as the facts appearing of record, and the conclusions reached by the court, were set out at length in that decision, we deem it unnecessary to reiterate them, but incorporate said decision herein by reference as though here fully set out.

Plaintiff's motion for rehearing was based upon the following grounds: (1) That the evidence establishes that the involved merchandise was both entered and appraised in United States dollars and that no conversion of currency was necessary in the liquidation of the entry, and (2) in any event, if the appraisal was in Austrian schillings, the action of the collector in converting such currency into United States dollars was erroneous and illegal and contrary to the provisions of section 522, *supra*.

At the outset, plaintiff requested a clarification of the following statement in the original decision:

The first question to be considered is whether the entered value was in United States dollars or in Austrian schillings. It is clear that the transaction itself was in dollars, but since the entry is based on the home market value, which appears to have been higher than the purchase price, the currency actually paid by the plaintiff is immaterial.

Since plaintiff is uncertain as to the meaning thereof, we will state that the record shows that the merchandise was actually paid for in United States dollars, but the currency actually paid by the plaintiff is immaterial to the issue before us, namely, whether the entry and appraisal were in dollars. We concluded further that entry was made at the home market value of 12 Austrian schillings per volume, less a 45 per centum discount, or 6.60 Austrian schillings per volume, which an analysis of the invoice and entry papers indicates is higher than the purchase price.

On rehearing, plaintiff introduced the testimony of Deputy Collector Geraghty, in charge of the liquidating division at the port of New York, the port of entry, in an attempt to establish the illegality of the conversion of currency, as made by the collector. This witness, whose duties involve liquidation of entries, including conversion of foreign currencies into United States dollars, and whose office supplies the last-known rate of exchange it has to customs brokers, for the purpose of making entry, testified that the published or proclaimed rate for the Austrian schilling, as found in T. D. 49457, as of March 12, 1938, was $0.188933. There was offered and received in evidence, as plaintiff's exhibit 10, a photostatic copy of

the certification by the Federal Reserve bank, giving a rate of exchange for the Austrian schilling up to June 8, 1938. Counsel for the plaintiff stated that his object in producing this evidence was to show that from May 6 to June 8, 1938, there was a gradual decrease in the rate for the Austrian schilling, and he contends that the collector should have adopted the rate given for either June 8 or June 13. For the reasons set forth in our original decision, we find the rates certified for dates other than the date of exportation are entitled to little or no weight in arriving at a determination of the issue here presented.

The deputy collector testified that, for the purpose of making entry of merchandise and estimating duties, his office, upon request, furnishes importers with a rate for the conversion of the currency of invoices. He further testified that, upon liquidation, if there is no proclaimed rate or no certified rate, liquidation is suspended sometimes for a considerable period of time. However, on cross-examination, the witness admitted that in cases where they receive specific instructions from the Bureau of Customs which will permit them to proceed with the liquidation they do so. He further admitted that, in the instant case, specific instructions were received to use the 3 to 2 ratio, and to use the certified rate for reichsmarks, which instructions were followed. We find no support in this evidence for plaintiff's contention that liquidation should have been suspended until such time as the Secretary proclaims a value for the Austrian schilling or the Federal Reserve bank certifies a buying rate therefor. Under the conditions above set forth, there could never be a proclaimed value or certified buying rate for the Austrian schilling, as contemplated by section 522, *supra*, on the date of exportation of the merchandise here involved. The country of exportation was Germany, the Republic of Austria having ceased to exist as an independent state, since it had been incorporated into the territory of the German Government. (T. D. 49503.) The currency of the country of exportation (Germany) was reichsmarks at the date of exportation. Therefore, the reichsmark was the "foreign currency," which the collector must convert under said section 522. By decrees of April 23, 1938 (exhibit 9), the German Government liquidated the Austrian National Bank, provided for the redemption of Austrian schillings at the ratio of 3 schillings to 2 reichsmarks, and prescribed that, thereafter, reichsmarks should be the legal currency in former Austrian territory. The collector, at the time of liquidation, had been apprised of these German decrees and, in addition thereto, the declaration on the reverse side of the certified consular invoice stated that the home market value was 4.40 reichsmarks per book. Accordingly, he converted the 4.40 reichsmarks into United States dollars, as provided for in said section 522, i. e., at the buying rate of $0.0402756, certified by the Federal Reserve bank for the German reichsmark on the date of exportation. (T. D. 49632.)

We find no new or additional evidence presented on rehearing which would cause us to depart from the holdings in our original decision. Said decision is, therefore, adhered to, and we hold that the merchandise involved herein was entered and appraised at 6.60 Austrian schillings per volume. We further hold that the method used by the collector in converting the Austrian schillings into United States dollars was justified.

The protest is, therefore, overruled. Judgment will be rendered accordingly.